## The Pangussett.

## The Yankee Doodle.

*(District Court, S. D. New York. May 31, 1881.)*

1. ADMIRALTY — CROSS-LIBELS — COLLISION — TWO SAIL-VESSELS ON CROSSING COURSES, ONE WITH WIND ON PORT SIDE—SEVENTEENTH RULE—LOOKOUT—DUTY OF OFFICER OF DECK—TWENTY-FOURTH RULE—KEEPING COURSE UNDER SEVENTEENTH RULE—CHANGING COURSE BEFORE COLLISION.

Where the schooners P. and Y. D. collided below Barnegat light, off the Jersey coast, about half past 6 A. M., April 6, 1878, the former striking the latter on the starboard side, staving it in, and causing the loss of her mainmast, while the P. had her bowsprit broken, and was otherwise injured, and the Y. D. claimed that when she sighted the P., while she was heading S. W., the wind being W. by N., she first saw her green light half a point on her port bow, and thereupon luffed to S. W. by W., which course she steadily kept to let the P. pass on her port side, but the other's green light drew across her bow, and kept on till it appeared on her starboard bow, whereupon, the vessels being by this time quite near, she kept off to let the P. pass on that side, but both the P.'s lights then appeared, when, by keeping off, she had brought the P. about abeam, showing that the P. had also kept off, and was heading directly for her, and the P. after thus keeping off luffed just before the collision in order to go under the stern of the Y. D.; and the P. claimed that she first saw the other's red light about a mile distant, half a point on her port bow; that this light broadened on her port although the P. had ported a point and a half, changing her course to N. E., but that both lights of the Y. D. then appeared two to three points off her port bow, showing that she was heading towards the P., when the P. put her tiller hard a-port and so held it until the collision:

*Held*, on the evidence, that the Y. D. first saw the other's green light on her port bow when she luffed to N. W. by N., and kept steadily on that course until the P.'s green light appeared on her starboard bow, and therefore that the P. could not have made and held the red light of the other on her port bow, as she claims, but that she must have had the Y. D. on her starboard bow.

That the appearance of the Y. D.'s two lights on the P.'s port bow indicated, or should have indicated, to the latter that she was crossing the course of the

other vessel, and was not caused by the Y. D. changing her course and keeping off, as claimed by the P.

That on the evidence the crossing of the course of the Y. D. by the P., indicated to the Y. D. by the green light of the P. showing on her starboard bow, and to the P. by her seeing the two lights of the Y. D., led both vessels to keep off; that the Y. D. was the first to make the change, and that this was immediately followed by the change on the part of the P.

*Also held,* the courses of the two vessels crossing so as to involve the risk of collision, that the P., having the wind on her port side and not being close-hauled, was bound, under the seventeenth rule of navigation, to keep out of the other's way.

That her obligation so to do was not affected by the Y. D. luffing one point when she first made the P., and that this was not a fault on the part of the Y. D. which contributed to cause the collision.

That the P. was in fault in not keeping a good lookout, and especially in this: that the mate, who was the officer of the deck and who was at the wheel, was not where he could keep the light of the Y. D. in view after it was sighted and reported by the lookout, his view of it being obstructed by the deck load, and that this fault directly tended to cause the collision.

*Also held,* that the Y. D. was in fault in not keeping her course, under the seventeenth rule, instead of keeping off when she observed that the P. had crossed her bows, which maneuver was not rendered necessary to avoid immediate danger, under rule 24, but, on the contrary, was admitted by her master to have been made in order to aid the P. in her supposed intention to pass on the starboard side, and actually embarrassed the movements of the P. and contributed to cause the collision.

That each vessel being thus brought into immediate danger by the fault of the other, the collision could not be attributed solely to the luffing by the P. just before the collision.

In Admiralty.

*Benedict, Taft & Benedict,* proctors for the Yankee Doodle.

*Beebe, Wilcox & Hobbs,* for the Pangussett

CHOATE, D. J. These are cross-libels for collision. At about half past 11 o'clock on the night of the sixth of April, 1878, the two schooners came in collision off the Jersey coast a little below Barnegat light. The Pangussett was bound from York river, Virginia, to New York, with a cargo of pine wood. The Yankee Doodle was bound from New York to Baltimore with cargo. The night was clear and starlight. The parties differ as to the direction of the wind, those on the Yankee Doodle claiming that it was W. by N., those on the Pangussett that it was N. W. The libel of the Yankee Doodle puts the wind at about W. N. W. I think the weight of the evidence is that the wind was W. by N., about a six-knot breeze. The Yankee Doodle had her lower sails set and two jibs. Her course at the time she made the light of the Pangussett was S. W., and she was making five or six miles an hour. The Pangussett carried double-reefed foresail and mainsail and had one jib set. Her course was N. E. by N. ½ N.,

when she made the light of the Yankee Doodle. On the deck of the Pangussett were three men—the mate, who was at the wheel, and two seamen, who appear both to have acted as lookouts, one of them being on the forecastle deck, the other on the forward part of the deck-load of wood. On the deck of the Yankee Doodle there were also three men—the master, on the quarter-deck; the mate, who was forward on the lookout; and a seaman, at the wheel. The lookout on the Yankee Doodle reported a light on the lee (port) bow. It was seen at once by the master. It was so distant that at first its color was not discerned, but immediately after it was seen to be a green light. The master and the mate (lookout) both testify that it was about half a point on the port bow. The Yankee Doodle was then nearly as close to the wind as she would lie with her sails full. The master immediately gave an order to the wheelsman to luff one point, and the wheel was ported so that she headed S. W. by W., and she was steadied at that point. The effect was that her sails shook, and her headway was considerably checked. The wheelsman also testifies to seeing the green light under the main-boom after she was heading S. W. by W. The green light drew across the bow and kept on till it appeared on the starboard bow. The master and mate both testify to this, and make it bear half a point on the starboard bow. By this time the vessel bearing the light had approached very near them. Her sails could be distinctly seen, even before she crossed the Yankee Doodle's bow. Up to this time, according to the testimony of those on the Yankee Doodle, the latter vessel was kept steadily on her course of S. W. by W. Her master then gave an order to the man at the wheel to keep hard off. The wheel was thrown hard a-starboard. The object of this movement was, as the master of the Yankee Doodle avows, to give the other vessel more room to pass on his starboard side. The master testifies that when he luffed a point after first sighting the light he expected the other vessel to keep off, show him her red light, and pass on his port side; but when she kept on across his bow, still showing her green light, and was half a point on his starboard bow, he starboarded to give her more room to pass that way. From an observation made to his wheelsman or mate, at the time of giving the order, it would seem that he suspected that the other vessel had not yet seen the Yankee Doodle. He testifies that when he kept off he did not expect a collision. It is not claimed in the pleadings, nor is it shown by the testimony, that this movement was made in extremis to ease the blow, or as a desperate movement to avoid an almost inevitable collision. The testimony on the part of

the Yankee Doodle tends to show that soon after the Yankee Doodle had kept off, and when her course was changed to the southward four or five points, so that the light of the Pangussett bore about abeam, the green light of the Pangussett up to that time remaining in sight, her red light also appeared, showing that the Pangussett had also kept off, and had changed her course sufficiently to be heading directly for the Yankee Doodle; that thereupon the main-sheet was let go to make her head off more rapidly, and she was still swinging to the southward, and had got headed round to about east, when the Pangussett came into collision with her on the starboard side, near the main rigging, striking nearly at right angles with the course the Yankee Doodle was then on. The Pangussett had her bowsprit broken off near the knight-heads, and was otherwise injured about the bow. She claims about $800 damages. The Yankee Doodle lost her mainmast, and was badly stove in the starboard side. She claims about $2,500 damages. The libel of the Yankee Doodle charges, and the testimony of those on board of her tends to show, that after the two lights of the Pangussett showed nearly abeam she hid her green light and continued to show her red light as she came on, but that just before she struck both lights came in sight again, and then the red light disappeared and the green only remained in view up to the time of the collision; showing, as they insist, that after keeping off the Pangussett changed again and luffed up, probably in order to go under the stern of the Yankee Doodle, and that she was on this luff when she struck.

The case made by the Pangussett is irreconcilable with that made by the Yankee Doodle. A light was seen and reported on the Pangussett, apparently a mile or more away. It was a red light, and so far it confirms the testimony of those on the Yankee Doodle that they saw the light of the Pangussett over their port bow. But the two lookouts on the Pangussett testify that they saw the red light on their port bow about half a point. The mate of the Pangussett could see nothing forward from his position at the wheel, but he swears that at the time it was reported he was standing up on the tiller and saw the red light. He says it was ahead, and, *if anything*, a little on the port bow; that he then changed his course to N. E., porting a point and a half, and steadied at that; that he then stood up again and looked at the light, and it bore a point and a half on the port bow. The men forward also testified that the light broadened on the port bow, but their testimony does not show that they paid much attention to it again till they saw both lights, when one of them ran aft and reported

to the mate that that vessel was keeping off and running down for them. The mate testifies that on receiving this report he put his tiller hard a-port, and put the tiller in the becket and jumped up on the taffrail, and saw the two lights of the other vessel about two and a half to three points off his port bow; that his tiller was kept hard a-port till the collision.

It is evident that if those on the Yankee Doodle saw the *green* light of the Pangussett first on their port bow, and then, after its crossing their bow, on the starboard side, till the vessels were very near together, it is impossible that those on the Pangussett should have seen the red light, and then both lights, of the Yankee Doodle over their port bow, as they swear they did. If it stood merely on the testimony of those on the Pangussett as to their first sight of the red light, it would be quite conceivable that the discrepancy was merely owing to a mistake on their part as to its bearing. The two lookouts made it but half a point to port, and the mate was certainly doubtful if it was to port at all. So small a misjudgment in the bearing of a light is clearly within the range of possibility, but when their testimony shows that they ported, bringing it so much further on the port bow, it seems hardly to admit of the theory of mistake on their part, if, in point of fact, it was, even after their porting, still on the starboard bow, as the testimony of the three witnesses from the Yankee Doodle, if credible, clearly shows. It is suggested, indeed, that those witnesses may have mistaken a red light for a green one. But the theory of color-blindness, which would be very plausible if there were but one witness to the color of the light, is destroyed by the number of the witnesses, and their testimony is too positive to admit of the theory of mistake on their part as to the color. It is necessary, therefore, to determine at the outset which proposition is to be accepted as true—that those on the Pangussett made and held the red light of the Yankee Doodle over their port bow, or that those on the Yankee Doodle saw a green light. Upon the whole testimony I am clearly of opinion that the story of the Yankee Doodle is, in this respect, to be taken as the truth. The testimony of the two seamen on the Pangussett plainly shows that they were not keeping a good lookout for this light after they first saw it. They appear to have looked at it again,—at least, they so testify,—but they do not claim to have kept a steady watch on it as those on the Yankee Doodle did upon the light which they saw. Moreover, the mate of the Pangussett, who was at the tiller, could not see forward, and, until they were

surprised by seeing the two lights of the other vessel bearing down
on them, he had, at most, but two very brief glimpses of the light.
It was in sight several minutes before the two lights came into their
view, and he testifies that having ported enough, as he thought, to
clear the other vessel, he asked the lookout, when he thought he
ought to see it aft of the deck load, whether it was nearly abeam;
that the lookout replied, "Not quite." There is no confirmation of
this conversation, and I cannot credit it, because one of the lookouts
says that the light was never more than three-quarters of a point on
the port bow, and the other does not give it a bearing that could in
any sense properly be described as "not quite abeam." But the tes-
timony of the mate clearly shows that although, as officer of the
deck, he was bound to keep the light constantly in view after it was
reported till all possibility of collision had passed, yet he failed
wholly to do so, and, having changed his course, as he thought, suffi-
ciently to clear it, took it for granted that he would clear it, and
took no more notice of it till roused by the alarm of the lookout.
His testimony as to what was seen from his vessel, therefore, is of
very little value. And whether it is a case of false testimony or of
gross misjudgment as to bearing, or (what is not impossible) a case
of mistaking the light of another vessel on their port bow for the
light of the vessel whose two lights they afterwards saw, but whose
light they may not have seen at all before, it must be held that they
had the Yankee Doodle on their starboard bow, and not on their port
bow, all the time, and that if they ported a point and a half, and
kept on that new course, as the mate testifies, even that movement
did not bring the light of the other vessel on their port bow.

Assuming, then, that the Pangussett was crossing the bow of the
Yankee Doodle from port to starboard, showing her green light all
the time, it would of course happen, when she reached the point where
her course intersected that of the Yankee Doodle, that she would see
both lights of the Yankee Doodle. There is no reason, therefore, for
rejecting the testimony of those on the Pangussett that, after seeing
the red light for several minutes, they suddenly saw both lights. This
is in entire harmony with the testimony of those on the Yankee Doo-
dle, that the Pangussett crossed their bow. The men on the Pangus-
sett, however, appear to have inferred from this seeing of the two
lights that the other vessel was keeping off across their course. On
the theory that they had ported sufficiently to clear her, and that
their earlier observation of her bearing was correct, this inference
would have been correct. But on the assumption that the light had

been all the time on their starboard bow, it only indicated, or should have indicated, to them that they were crossing the course of the vessel bearing the red light. And crediting, as I do, the testimony on the part of the Yankee Doodle that she kept steadily on her course, N. W. by W., till the Pangussett's green light showed on her starboard side, I must find that this is all that it did indicate, and that the appearance of the two lights was not caused by the Yankee Doodle changing her course and keeping off.

This crossing of the bows of the Yankee Doodle by the Pangussett, indicated to the Pangussett by the seeing of the two lights and to the Yankee Doodle by the showing of the green light on the starboard bow of the Yankee Doodle, was the occasion of a change of course on the part of both vessels. That both vessels, at or very soon after this happened, kept off,—the Pangussett on a hard a-port wheel, and the Yankee Doodle on a hard a-starboard wheel,—does not admit of any doubt. The Pangussett claims to have made this maneuver as the only means of avoiding the collision, because the seeing of the two lights led her mate to believe that the Yankee Doodle, being on her port bow, was keeping off across her bow. If this was the real motive of the movement of the Pangussett, it was based upon a mistake as to the movement and course of the Yankee Doodle, which mistake the mate of the Pangussett was led into by his misjudgment as to the bearing of the Yankee Doodle, and his failure to keep the light reported in view, as he should have done. The motive on the part of the Yankee Doodle is conceded by her master to have been simply to aid the Pangussett in her supposed intention to pass on the starboard hand.

It is not entirely clear upon the evidence which vessel kept off first, but I think the preponderance of the evidence is that the Yankee Doodle did so. The mate of the Pangussett testifies that, on hearing the report that the other vessel was keeping off and running down on them, he instantly hove his tiller hard a-port and put it in the becket, and then jumped up on the taffrail and for an instant saw both lights, and then the red light disappeared and the green alone showed. There is no doubt that the alarm was caused by the lookout discovering the two lights, and it seems hardly possible, if this statement of the mate is true, that the green light of the Pangussett should have showed half a point on the starboard bow of the Yankee Doodle while the Yankee Doodle still kept her course, or that if the Pangussett thus instantly ported on the showing of the two lights her own green light should have continued visible to those on the Yankee Doodle

even after the Yankee Doodle had changed her course several points by keeping off, as her witnesses testify that it did. The speed of the Yankee Doodle had been very much diminished by her keeping so close to the wind. Her master thinks she was not working more than a mile an hour when she kept off. She had more sail on than the Pangussett, and as she kept off she would, of course, increase her speed; and when it was seen that the Pangussett was keeping off also, which was discovered by seeing her two lights nearly abeam, the master of the Yankee Doodle let go her main-sheet, which also tended to give her more speed. But upon first keeping off she must, it would seem, have moved forward less rapidly than the Pangussett did when she first kept off. In view of these circumstances, and the length of time the green light of the Pangussett remained in sight, I am unable to credit this statement of the mate, and think that it is made out that the Yankee Doodle was the first to keep off, and that almost immediately afterwards the Pangussett kept off.

The evidence, I think, shows that the vessels were very near each other when the Yankee Doodle kept off. Her master estimated the distance of the Pangussett when she crossed the bows of the Yankee Doodle at less than a quarter of a mile. Other witnesses make the distance half that or less. There are indications in the testimony on both sides that the time was very brief between the Pangussett crossing the bow of the Yankee Doodle and the collision. The estimates of the time from the first seeing of the light to the happening of that event, and from that event to the collision, make the latter period of time a very small proportion of the whole time the vessels were in sight of each other. When the master of the Yankee Doodle concluded to keep off, his order was to keep *hard off;* and not satisfied with the way the wheelsman turned his wheel he reproved him for not being quick, and put his own hand to the wheel. The wheelsman of the Yankee Doodle thought that if both vessels had kept on they would not have cleared, but might have cleared if the Yankee Doodle had kept on and the Pangussett had luffed up quickly. The master of the Pangussett was lying down in his cabin and heard the alarm of the lookout caused by his seeing the two lights of the Yankee Doodle. He instantly rushed on deck and jumped upon the taffrail, and saw the Yankee Doodle right ahead of the Pangussett, the collision following almost instantly. These circumstances, with others, strongly tend to show that when the vessels kept off they were very near together. On the part of the Pangussett it is denied that she luffed after keeping off. Her mate testifies that her tiller was not

moved again after he put it in the becket till the collision. For the reasons already given his testimony is not entitled to much weight. The proofs tending to show that she did luff are the testimony of the three witnesses from the Yankee Doodle, and the evidence as to the headings of the vessels at the moment of collision. Of the three men on the Yankee Doodle, one, the mate, was forward, and the others, the master and the wheelsman, were on the quarter-deck aft of the point where the Yankee Doodle was struck. They all testify to the shutting in of the green light, and to its reappearance and the hiding of the red light before the Pangussett struck. As to the mate on the bow, this might be the effect of the bow of the Yankee Doodle passing the bow of the Pangussett; but as to the master and wheelsman, this theory does not explain what they saw of the change of lights; and, if their observation and recollection are correct, the Pangussett, after keeping off, must have changed again and thrown her tiller to starboard. There is also a considerable weight of evidence to show that the Yankee Doodle, at the time of the collision, was heading about east. Her wheelsman testifies to seeing the compass at east by south before they came together. Her fore-boom jibed before they struck. The angle of the collision was not far from a right angle. If the Yankee Doodle was heading anywhere near east at the time of the collision, the Pangussett must have luffed up after keeping off to bring her nearly head on, as she was when she struck. This is still more evident, if, as some of the witnesses from the Pangussett, testify, the blow was angling aft or towards the stern of the Yankee Doodle. I think the preponderance of the evidence is that the Pangussett did luff just before the collision.

The questions of fact being thus disposed of, it remains to determine which of the parties is responsible for the collision. The case falls clearly within the seventeenth rule of navigation, which provides that when two sail-vessels are crossing so as to involve risk of collision, if they have the wind on different sides the vessel with the wind on the port side shall keep out of the way of the vessel with the wind on the starboard side, except in the case in which the vessel with the wind on the port side is close-hauled and the other vessel free, in which case the latter vessel shall keep out of the way. These vessels had the wind on different sides. Their courses were crossing, so as to involve risk of collision. The Pangussett had the wind on her port side, and she was not close-hauled. She was bound to keep out of the way. Under the twenty-third rule the Yankee Doodle was equally bound to keep her course. I do not think that the luffing

up of the Yankee Doodle a point nearer the wind, as soon as the light of the Pangussett was discovered, affects the case. It had no tendency to mislead the other vessel, as it did not change the light shown. It made it more certain that the other vessel would see only the red light. The change was made when they were so far apart that it could safely be made without embarrassment, and it did not in fact conduce to the collision. The Pangussett, on making the light of the Yankee Doodle, recognized her duty to keep out of the way if she ported, as the mate testifies, but she failed to make effectual the maneuver intended to be performed of shaping her course so as to pass on the port side of the other vessel, either by not porting enough, or, after porting, by not keeping steady on her new course. This failure is primarily to be attributed to a very gross failure of those in charge of her to keep a good lookout. The negligence of the mate in this respect is especially reprehensible. It is as clearly the duty of the officer of the deck, after a light is reported, to keep it in view and to watch its movements, and the effect of the movements of his own vessel taken with reference to it, as it is of the lookout to see and report a light that comes in view. *The Star of Scotia* 2 FED. REP. 592. Yet this mate, confessedly, was where he could not perform this duty, because of the pile of wood on deck before him; and, upon his own showing, he was navigating his vessel by questioning the lookout as to the movements of the other vessel. On his own testimony, he shaped his course to clear her, as he supposed, and then took no more notice of her till the alarm of the lookout that she was coming down on him, except to put this question to the lookout. This was gross carelessness, and brought the vessels into a position of much greater risk of collision than they were when he first made the light, and directly tended to cause the collision. The responsibility for avoiding the collision, however, was still on the Pangussett, and she made another maneuver by keeping off. This also was a mistake, based upon an erroneous inference as to the previous course and movements of the Yankee Doodle, and is properly to be charged to the previous failure to keep a good lookout.

Yet I am not able to justify the Yankee Doodle in her change of course by keeping off after she saw that the Pangussett had crossed her bows. It was not the case of a movement rendered necessary to avoid immediate danger under the twenty-fourth rule. It is not claimed to be such in the pleadings, nor upon the testimony of the master of the Yankee Doodle himself. He does not testify that the

Pangussett could not, if she had kept her course, have passed safely on the starboard side. Therefore, having departed from the rule which required him to keep his course, he must show that the movement did not contribute to cause the collision, or his vessel will be chargeable with fault. This is not shown. It does not appear that if the Yankee Doodle had kept her course instead of keeping off there would still have been a collision. It is not proven that the Pangussett could not, by keeping off when the Yankee Doodle changed her course, have avoided the collision if the Yankee Doodle had kept her course. Especially, in view of the fact that the speed of the Yankee Doodle was decreased, as her master thinks, to a mile an hour, it was not proved that the relative positions of the vessels and their distance apart rendered this impossible. This being so, the Yankee Doodle had no right to assume that to keep on to starboard was the only possible course for the Pangussett to take. The movement was based upon an inference of the master that the other vessel intended to keep on and pass him on the starboard side. This was a mistake. He had no right to change his course on such a supposition. He was not called upon to aid the Pangussett in the duty the law imposed on her to keep out of his way. The result showed that this attempt to aid not only failed of its purpose, but actually embarrassed the movement taken by the Pangussett to avoid the Yankee Doodle, and contributed to produce the collision. Nor is the responsibility of the Yankee Doodle relieved by the subsequent luffing of the Pangussett just before the collision. Assuming that this was also a mistake, and an ill-judged effort, in the presence of immediate danger, to avoid a collision, yet the vessels were brought into that immediate danger partly by the Yankee Doodle's failure to keep her course, and it cannot be claimed that this last error of the Pangussett alone caused the collision.

Both vessels being in fault the damages must be apportioned. Decree accordingly.